UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON CAMACHO *and on behalf of all other persons similarly situated*,

                        Plaintiff,

– against –

EMERSON COLLEGE,

                        Defendant.

**OPINION AND ORDER**

18 Civ. 10600 (ER)

Ramos, D.J.:

      Emerson College, with its main campus in Boston, Massachusetts, participated in a college fair in Manhattan. Later that same month, it was served with a complaint alleging that a blind New Yorker, Jason Camacho, had attended that fair, gone to Emerson's website, and run into several web-design-based barriers that prevented him from accessing information through his screen-reader software. Emerson now moves this Court to dismiss Camacho's amended complaint because the Court does not have personal jurisdiction over it and because Camacho has failed to allege injury sufficient to convey standing. The Court finds that it does not have personal jurisdiction and, on that basis, GRANTS Emerson's motion.[1]

**I. BACKGROUND**

      Emerson College is a post-secondary school chartered under the laws of the Commonwealth of Massachusetts and with a main campus in Boston. Decl. of Sofiya Cabalquinto ("Cabalquinto Decl.") ¶¶ 3, 4, Doc. 26. It has no campuses, offices, bank accounts,

---

[1] In light of Camacho's submission of a declaration providing factual support for this Court's jurisdiction, Doc. 31, it is likely that he has Article III standing to bring this lawsuit. But, given the Court's finding that it does not have personal jurisdiction over Emerson, the Court does not decide the issue of subject-matter jurisdiction in this opinion.

or other physical presence in New York.  *Id.* ¶ 4–10.  As part of its recruiting efforts, its admissions team travels the country to visit prospective students.  In 2018, the team collectively attended nearly 900 admission events, including 175 college fairs, one of which took place at the Javits Center in New York City in November 2018.  *Id.* ¶ 11; Decl. of Camille Bouknight ("Bouknight Decl.") ¶ 3, Doc. 27.

Jason Camacho attended that fair, as well.  First Amended Compl. ("Compl.") ¶ 33, Doc. 18.  Camacho is a blind resident of Brooklyn, New York.  *Id.* ¶ 20.  He currently attends the Catholic Guild for the Blind and avers that he intends to attend a four-year college to obtain a bachelor's degree.  Decl. of Jason Camacho ("Camacho Decl.") ¶¶ 4, 5, Doc. 31.  While at the fair, he spoke "to representatives of several colleges," but, finding that the information they offered was "limited," he left.  *Id.* ¶ 8.  He does not allege that he spoke with anyone representing Emerson College, and neither Emerson's records nor the people staffing Emerson's table suggest he, or any visually impaired person, approached the table that day.  Bouknight Decl. ¶¶ 5, 6.

Camacho avers that he spent the next several days on his computer, researching the colleges that had attended the fair.  Camacho Decl. ¶ 8.  During this research, he went to Emerson's website, located at www.emerson.edu.  Compl. ¶ 34.  To browse the website, he attempted to use screen-reader software called JAWS, which reads aloud each element on a webpage, allowing a visually impaired user to navigate the page.  *Id.* ¶¶ 25, 26, 32.

He alleges that certain aspects of the design of Emerson's website prevented him from obtaining useful information.  Generally, he alleges that images and links on the website sometimes did not contain any associated text, which prevented his screen reader from being able to tell him about the contents of those elements.  *Id.* ¶ 36.  More specifically, he avers that a pop-up box prevented him from being able to use his screen reader to navigate to a net-price

calculator he wished to use to calculate his anticipated financial aid.  Camacho Decl. ¶ 11.  The calculator is operated by the College Board at npc.collegeboard.org/app/emerson.  Decl. of Jason Beals ("Beals Decl.") ¶ 5, Doc. 33.

Emerson's website allows prospective students to apply to the college, schedule a visit and tour, and request additional information from admissions staff.  Compl. ¶ 10.  The website does not allow recruits to complete their application, however, because an in-person interview is required that cannot be scheduled through the website.  Beals Decl. ¶ 4, 9.  Any payments made by current or prospective students are made through a third-party website.  *Id.* ¶ 10.

Nine days after he visited the fair at the Javits Center, Camacho filed a lawsuit under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, as well as the New York Human Rights Law, N.Y. Exec. Law § 296, New York State Civil Rights Law § 40-c(2), and the Rehabilitation Act of 1973, 29 U.S.C. § 794.  Class Action Compl., Doc. 1.  In the complaint, which he amended in March 2019, he alleged that his difficulties in collecting information about Emerson violated his rights under each of these laws, and he demanded injunctive relief along with statutory damages.  Compl. at 28, 29.  He also sought to certify a class of those who have faced similar difficulties.  *Id.* ¶¶ 53–60.

Emerson filed a motion to dismiss under Rule 12(b) arguing that this Court could not exercise personal jurisdiction over it or, in the alternative, that Camacho had not suffered injury sufficient to establish Article III standing and thus subject-matter jurisdiction.  Doc. 24.  It supplemented its motion with several declarations from Emerson staff.  *See* Cabalquinto, Bouknight, and Beals Decls.  Camacho supplemented his opposition to the motion with his own declaration.  *See* Camacho Decl.

## II.    RULE 12(b)(2) AND PERSONAL JURISDICTION

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). To meet this burden where there has been no discovery or evidentiary hearing, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction. *Id*. The Court construes all of the plaintiff's allegations as true and resolves all doubts in his favor. *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). As 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on such motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *accord Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

In a diversity action, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). In New York, this determination involves a two-step analysis. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). The Court must first determine whether

personal jurisdiction is appropriate pursuant to the state's general jurisdiction statute, C.P.L.R. § 301, or its long-arm jurisdiction statute, C.P.L.R. § 302.[2] If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010).

## III. DISCUSSION

The parties principally dispute whether C.P.L.R. § 302(a)(1) grants this Court personal jurisdiction over Emerson.[3] Under § 302(a)(1), a court examines "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 850 N.E.2d 1140, 1142 (N.Y. 2006)). Ultimately, a defendant transacts business within the meaning of § 302(a)(1) when it purposefully "avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967)). "As for the second part of the test, a suit will be deemed to have arisen out of a party's activities in New

---

[2] C.P.L.R. § 302(a) allows a court to exercise personal jurisdiction over a non-domiciliary defendant who: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . .;" (3) "commits a tortious act without the state causing injury to person or property within the state . . . ;" or (4) "owns, uses or possesses any real property situated within the state."

[3] In his opposition, Camacho only argues that this Court has specific jurisdiction over Emerson. Additionally, although he cites C.P.L.R. § 302(a)(2) once in his brief, he presents no arguments or authority supporting his position that Emerson committed any tortious act against him in New York. *See also Weeahandi v. Am. Statistical Ass'n*, No. 14 Civ. 7688 (AT), 2015 WL 5821634, at *4 (S.D.N.Y. Sept. 30, 2015) (finding that neither the ADA nor the New York or New York City Human Rights laws sound in tort for the purposes of § 302(a)(2)). The Court thus focuses only on § 302(a)(1).

5

York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines*, 490 F.3d at 246 (internal quotations and alterations omitted).

Camacho points to three transactions that could bring Emerson within the reach of § 302(a)(1) for the purposes of his claim, but he focuses the majority of his arguments on urging the Court to find that Emerson's operation of emerson.edu suffices. The Court begins its analysis there.

### A. The Website

Operating a website that may be accessed from New York, without more, does not bring the operator within the jurisdiction of New York courts. *Best Van Lines*, 490 F.3d at 253. To determine whether the operation of a website amounts to the transaction of business in New York, courts typically look at the degree of interactivity offered by the website. *See Touro College v. Fondazione Touro University Rome Onlus*, No. 16 Civ. 3136 (DAB), 2017 WL 4082481, at *8 (S.D.N.Y. Aug. 31, 2017); *see also Best Van Lines*, 490 F.3d at 252 (suggesting that this interactivity framework is helpful for determining whether a defendant transacted business in New York). If the website is purely passive — that is, if it is only for the posting of information — then the operation of the website does not rise to the level of a transaction for the purposes of New York jurisdiction. *See Best Van Lines*, 490 F.3d at 252 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). If the website allows for transactions to be completed, for example by allowing the purchase of goods or services, then the website is fully interactive and can support the exercise of New York's jurisdiction over those transactions. *See id.* Many websites, however, fall within a middle category, "permit[ing] the exchange of information between users in another state and the defendant." *Citigroup Inc. v.*

*City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) (citing *Zippo*, 952 F.Supp. at 1124). This middle category may be a basis for jurisdiction "depending on the level and nature of the exchange." *Id.*

Emerson's website falls within this middle category of websites that mix interactive and non-interactive features. It mainly focuses on providing visitors with information about Emerson's operations, including, as plaintiff alleges:

> school location and hours, curriculum and programs of instruction, academic calendars, course and admission prerequisites, cost of tuition, available financial aid, career services, accreditation, faculty, campus security, transfer credits, textbooks, and other vital information needed by prospective students in order to make an informed decision about [Emerson].

Compl. ¶ 30.

The website does provide some level of interactivity, though. It allows students to apply to the college, for example, and schedule appointments with admissions counselors. It also allows prospective students the ability to submit applications, although no fees are paid through the web site and there are additional steps necessary to complete the application that cannot be taken through the website.

Camacho points to Emerson's net price calculator, as well, which allows students to input their financial information and receive an estimate of the amount of financial aid for which they could qualify. Camacho does not provide any information in his complaint or declaration about where on the website this calculator is located. Emerson, by contrast, declares that this calculator is hosted and operated on a separate domain by the College Board, *not* Emerson. A review of the website confirms that Emerson's declaration is true. *See Diaz v. Kroger Co.*, No. 18 CIV. 7953 (KPF), 2019 WL 2357531, at *7 n.10 (S.D.N.Y. June 4, 2019) (conducting independent review of website referenced in the complaint to resolve factual dispute). The

7

calculator is not on emerson.edu; the Court will not consider it for purposes of determining whether Emerson's website is interactive. *Cf. Ye Old Time Keeper, Inc. v. C.R. Martin Auctioneers, Inc.*, No. 18 Civ. 4377 (ADS)(ARL) 2018 WL 1832930, at *6 (E.D.N.Y. Apr. 17, 2018) (finding a passive website that referred users to a third-party site with interactive features was not interactive for purposes of personal jurisdiction).

Emerson's website is similar to websites other courts have found to fall within this middle category. For example, in *Touro College*, the court found a college website that allowed users to "download program information" and access an admission form as part of the middle category. 2017 WL 4082481, at *9. It also allowed prospective students to contact the college's staff for more information. *Id.* In *Sullivan v. N.J. Strong Licensing LLC*, the court found that a gym website that allowed members to manage their profile and apply to advertise in the gym was in the middle category, as well. No. 18 Civ. 7753 (RA), 2019 WL 3066492, at *3 (S.D.N.Y. July 12, 2019). Like these sites, Emerson's website primarily serves to connect users to the college without allowing those users to directly engage in its business. Indeed, to receive any educational service, a user would need to, at some point, go to one of Emerson's campuses or offices, none of which are in New York. *Cf. id.* (noting that a New York website user would need to travel out of state in order to receive a service).

Camacho fails to convince the Court otherwise. He (with a parenthetical quotation contained within *another* citation, Doc. 34 at 9) points the Court to a single case where a court found a website anything like Emerson's to be sufficiently interactive to allow the exercise of personal jurisdiction by virtue of its interactivity alone.[4] The case, *Thomas Publishing Co. v.*

---

[4] Camacho also cites *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010). But that case is completely irrelevant for this proposition because it involves a site that allowed users to purchase and have shipped to them physical goods. *Id.*

8

*Industrial Quick Search, Inc.*, involved a business that made its money by running display advertisements against search results of manufacturing and industrial companies. 237 F. Supp. 2d 489, 491 (S.D.N.Y. 2002). The court there found that the website allowed users "to submit company listings, track product areas, and submit e-mails directly to IQS's sales department." *Id.* at 492. Those features directly enabled advertisers to transact business with the company and made the site fully interactive, allowing the exercise of personal jurisdiction on their own; Emerson's website contains no such feature.

The only feature that approximates those in *Thomas Publishing* is Emerson's application. According to Emerson, however, a student is unable to complete any transactions solely on the website, as the listings business features in *Thomas Publishing* allowed. Furthermore, the payment of any fees or tuition is on a third-party site, keeping emerson.edu further removed from transactions of any kind, much less with New York. *Cf. Ye Old Time Keeper, Inc.*, 2018 WL 1832930, at *6. Camacho does not allege in his complaint or aver in his declaration anything to the contrary, so the Court must conclude that the website is part of the middle category of interactivity.

With Camacho having failed to show the Emerson website is fully interactive, "the question then, is whether [Emerson] purposefully targeted New York users through [its] website." *Touro College*, 2017 WL 4082481, at *10 (citing *Best Van Lines*, 490 F.3d at 252). But Camacho has entirely neglected to make a prima facie case that the answer is "yes." His complaint mentions no webpages directed at New York recruits, for example, and his declaration does not indicate he came across any web-specific marketing efforts directed at the state. Therefore, Emerson's operation of its website is not a business transaction aimed at New York. *See id.* at *11.

Even it if were, the interactive elements of the website do not give rise to the claim at hand.  Camacho alleges in his complaint that he generally had difficulty with the website due to the lack of alt-text and similar features.  In his declaration, he brings a new claim that pop-up boxes were interfering with his ability to navigate to the net price calculator.  Neither of these claims implicate the only parts of the website even approaching interactivity:  the calculator itself (assuming, for the moment, it is properly considered in this analysis), contact forms, and the application.

Accordingly, no part of the website provides a sufficient basis to allow this Court to exercise specific jurisdiction over Emerson under CPLR §302.

**B. Recruiting Within New York State and Serving Students from New York**

Camacho puts forth two other potential bases for specific jurisdiction:  Emerson's recruiting efforts within New York and the revenue it earns from students from New York.  Both are easily disposed of.  Even assuming that they are transactions directed at New York, they have nothing to do with the claim at issue here.[5]

In the case of recruiting efforts, Camacho does not allege that he interacted with Emerson's staff even once at the Javits college fair.  Nor does he allege that any Emerson representative or signage directed him to the college's website or otherwise directly enticed him to interact with the features that posed barriers to him.  There must be *some* nexus between the recruiting efforts and the allegedly discriminatory website, but Camacho has failed to even attempt to articulate one.  *See Best Van Lines*, 490 F.3d at 246; *see also Licci v. Lebanese Can.*

---

[5] Emerson attempts to argue that recruiting efforts alone cannot support a claim for personal jurisdiction, citing *Meyer v. Board of Regents of the University of Oklahoma*, No. 13 Civ. 3128 (CM), 2014 WL 2039654, at*3–*4 (S.D.N.Y. May 14, 2014).  But that case addresses a claim of *general*, not specific, jurisdiction, and has no bearing to the case at hand.

*Bank, SAL*, 960 N.Y.S.2d 695, 703 (2012) ([T]he "arise-from" prong [of analysis under § 302(a)(1)] limits the broader " transaction-of-business" prong to confer jurisdiction only over those claims in some way arguably connected to the transaction.").

The case of the New York students attending Emerson is even more attenuated. Camacho's memorandum of law argues without support in his complaint or declaration, that Emerson makes over $35 million per year from about 570 students that attend the school from New York. Doc. 30 at 5–6. But a memorandum of law is "not evidence at all," *Gianullo v. City of New York*, 322 F.3d 139, 142 (2d Cir. 2003) — for the purposes of a motion to dismiss for personal jurisdiction, complaints and declarations are. The Court does not consider this unsupported allegation.

Even if the Court were to consider it, Camacho's argument would fall short because the revenue from current New York students is irrelevant to Camacho's claims of having difficulty on Emerson's website. Moreover, he did not attempt to visit parts of the Emerson website that serve current students. Camacho cites *Excelsior College v. Frye* for the proposition that having students from New York exposes a school to suit in the state. 306 F. Supp. 2d 226, 229 (S.D. Cal. 2008). But *Excelsior* deals with an *online* school whose *online* students lived in New York. *Id.* The transactions in *Excelsior* that gave rise to the complaint had a nexus to the claim alleged because the education of those students occurred online. *Id.* Here, not only has Camacho failed to establish that Emerson is an online school, he has also failed to establish that he had any difficulty in accessing online educational services.

Camacho has failed to make a prima facie case that any transaction Emerson conducted in New York gave rise to his claims. Accordingly, this Court does not have personal jurisdiction under C.P.L.R. § 302(a)(1). Because it has determined that it does not have personal jurisdiction

under New York law, it does not examine whether exercising jurisdiction comports with the Due Process Clause.

### C. Jurisdictional Discovery

In a final effort to develop a jurisdictional foundation for his lawsuit, Camacho asks the Court for leave to conduct jurisdictional discovery. That request is DENIED. Camacho has not made out a prima facie case for personal jurisdiction, and he has not indicated to the Court what additional information he could discover from Emerson that would save his case's future in this District. *See G3100 N. Am., Inc. v. Paris*, No. 14 Civ. 3885 (VEC), 2014 WL 6604790, at *6 (S.D.N.Y. Nov. 21, 2014) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998)).

## IV. CONCLUSION

For the foregoing reasons, Emerson's motion to dismiss the amended complaint under 12(b)(2) is GRANTED, although Camacho is granted leave to refile in a court that can exercise jurisdiction over Emerson. Camacho's request for jurisdictional discovery is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 24, and close the case.

It is SO ORDERED.

Dated:   October 15, 2019
         New York, New York

                                                            _____
                                                            Edgardo Ramos, U.S.D.J.